THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RALPH JOHN WOLEVER, Defendant-Appellee.

Second District (2nd Division)   No. 75-300

Opinion filed October 22, 1976.

John H. Maville, State's Attorney, of Belvidere (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Daniel J. Norton, of Belvidere, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal by the State from the judgment of the circuit court of Boone County dismissing an indictment which charged the defendant with committing the offenses of robbery, aggravated battery and theft of property worth over $150.

The indictment was based on acts allegedly committed in Boone County in July of 1973. The defendant was located by the Boone County authorities shortly thereafter in the county jail at Muskegon, Michigan, where he was being held on a charge of "unlawfully driving away an automobile." In an interview at the Muskegon Jail he told the Boone

County authorities that he was going to be sent to the penitentiary at Jackson, Michigan.

On January 12, 1974, while the defendant was in the penitentiary at Jackson, he received notice of a detainer filed against him by the State of Illinois. The defendant, at his hearing on the motion to dismiss the indictment, testified that when he received the notice of detainer he "and Warden Egeler" (Jackson, Michigan penitentiary warden) signed an extradition form which, the defendant said, was sent to Boone County State's Attorney Maville in January 1974, in which, according to his testimony, the defendant requested a speedy trial on the Illinois charges. The defendant was not indicted on the Illinois charges until August 29, 1974, when an indictment was returned against him for aggravated battery and theft.

On September 6, 1974, the Boone County authorities sent a request to the Jackson penitentiary for temporary custody of the defendant. On September 23 the defendant wrote to the governor of Michigan, with a copy to the Boone County State's Attorney, reading as follows:

"I am writing you in regard to a letter received September 19, 1974, from Mr. Raymond H. Nelson, Bureau of Feild [sic] Services, informing me of Request for Temporary Custody by the State of Illinois.

In January of this year, I issued a statement to the State of Illinois, signed by Warden Egeler requesting a fair and speedy trial or to quash the dispition [sic] of this case citing Criminal Law (MCLA 780.601) Rainey v. Department of Corrections, that a criminal be brought to trial on a untried indictment of a party state within 180 days.

I am again citing this law to you (MCLA 780.601) which was upheld by the Governor of the State of Michigan.

I request now that the Governor of the State of Michigan denies my temporary custody to the State of Illinois under the above cited law."

A copy of this letter was received by the State's Attorney of Boone County on September 26, 1974.

On September 30 the warden of the Jackson penitentiary acknowledged receipt of the Boone County request for a detainer and on November 25 signed a form offering to deliver the custody of the defendant to Illinois. On January 23, 1975, the defendant was actually returned to the custody of Illinois. On March 25, 1975, the State dismissed the previous charge of aggravated battery in the indictment of August 29, 1974 (Case No. 74 CF 45), and sought a new indictment on the charges of theft and aggravated battery plus the charge of robbery. On March 23,

1975, the defendant was re-indicted on charges of aggravated battery, robbery and theft (Case No. 75 CF 13).

The defendant moved for dismissal of the indictment of March 23, 1975, and preliminary to the hearing on this motion the State moved to entirely dismiss the indictment of August 29, 1974, under Case No. 74 CF 45.

At the hearing on the motion to dismiss the indictment of March 23, 1975, which was held on April 8, 1975, the defendant contended that the State had not complied with the Agreement on Detainers, section 3—8—9 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1003— 8—9) in that he was not brought to trial within 180 days of his demand to the Illinois authorities for a speedy trial. The pertinent part of the Act reads as follows (article III(a) and (b) of the above cited Act):

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for a good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested."

The defendant claims that inasmuch as he returned the extradition form to the Boone County State's Attorney in January, 1974, with a request for a speedy trial on the Illinois charges, that he cannot now be tried on the

indictment of March 23, 1975. The State's Attorney, Mr. Maville, however, took the stand and testified that he never received any such communication from the defendant or the Jackson, Michigan warden and that the only communications he ever received from the defendant were a copy of the defendant's letter of September 23, 1974, to the Michigan governor and an undated letter, the contents of which were substantially the same as the letter of September 23, 1974, which Maville received in December of 1974. The clerk of the circuit court of Boone County also testified that the circuit court of Boone County never received a communication of any kind from the defendant or the warden of the penitentiary at Jackson, Michigan, requesting a speedy trial.

The trial court found that while the defendant did not prove he demanded a speedy trial of the Illinois charges in January, 1974, as he claimed, his letter of September 23, 1974, to the governor of Michigan, copy of which was received by State's Attorney Maville, and in which he referred to his previous request for a speedy trial, constituted substantial compliance with the Agreement on Detainers and was sufficient to begin the running of the 180-day period during which the defendant must be brought to trial after his demand for same. The judge, therefore, dismissed Counts 2 and 3—aggravated battery and theft—as not having been timely brought to trial. He also dismissed Count 1—robbery—since the State, upon inquiry, admitted it was based on the same circumstances out of which the original charges of aggravated battery and theft arose. (It will be recalled that the aggravated battery charge had been dismissed previous to the hearing on the Detainer Agreement motion and the State had voluntarily dismissed the theft charge.)

The State in this appeal points out that by the language of the Agreement on Detainers the steps are set out which a prisoner, subject to detainer, must take in order to invoke the Agreement on Detainers. He must cause "to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *." Moreover, the request of the prisoner for final disposition of his case is, by the language of the agreement, to be given to the warden or other appropriate prison official to be sent to the detaining prosecuting officer by registered or certified mail. Thus, the State argues, the agreement was not complied with since there is no record of a request for trial or other final disposition and the burden of proof is on the defendant, since the statute prescribes that it must be sent by registered or certified mail, and in the absence of such receipt, it is presumed the request was not sent.

This is apparently a case of first impression in this State as to the precise

question involved. We recognize that the Agreement on Detainers is remedial legislation and the defendant has been given some latitude in complying with its provisions in certain jurisdictions. (*Rainey v. Department of Corrections*, 41 Mich. App. 313, 199 N.W.2d 829 (1972); *People v. Esposito*, 201 N.Y.S.2d 83 (1960).) For a case more narrowly construing the agreement, see *Isaacs v. State*, ___ Md. ___, 358 A.2d 273 (1976). Nor, having regard to the purposes of the agreement, are we, for our part, inclined in a proper case to take a narrow view where a broader interpretation will more properly carry out the legislature's intention. But in this case, upon careful consideration, we find no room for the adoption of the more liberal viewpoint.

■■■ Even giving the language of article III a broad construction, as mandated by article IX of the Agreement, the defendant's letter of September 23, 1974, does not constitute substantial compliance with the Agreement. This letter, as the State points out, is not a request for speedy trial nor for final disposition. The letter itself is a request to the Michigan governor to deny the request of Illinois for temporary custody of the defendant. Nor can the letter be taken as evidence of a claimed previous demand for a speedy trial, thus incorporating such previous demand into it. The statute provides very specifically that any such demand is to be sent registered or certified mail to the proper demanding authority. Since the trial court found that the defendant failed to prove that he demanded a speedy trial in January, 1974, with which finding we agree, and since we also find that the letter of September 23, 1974, to the governor of Michigan could, in no way, be construed to be a demand for speedy trial, we are convinced that the defendant did not, either actually or constructively, comply with the provisions of the Act.

■■■ While we recognize the salutary purposes of the Agreement on Detainers and do not condone the delay which occurred in this case in returning the defendant to Illinois to stand trial, these circumstances do not take the place of an actual demand for a speedy trial. The period of time which elapsed before Illinois took decisive action cannot transform the defendant's letter of September 23 into substantial compliance with the language of article III of the Agreement on Detainers. That letter committed the defendant to nothing and did not notify the Illinois authorities of anything more than a statement that he had previously requested a speedy trial. It was not written for the purpose of obtaining a speedy trial but was obviously for the purpose of preventing the defendant's extradition to Illinois. As such it cannot, standing by itself, properly be accepted as a document which complies with the Agreement on Detainers by even the most liberal construction. We further find that the 180-day period during which an accused out-of-State prisoner must be tried does not begin to run until there is full compliance with the Act.

The judgment of the circuit court of Boone County is therefore reversed and the cause is remanded with instructions to reinstate the indictment under Case No. 75 CF 13.

Reversed and remanded with instructions.

SEIDENFELD and GUILD, JJ., concur.