**Eldridge D. SHANKS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 1, 1978.

Jack Emory Farley, Public Advocate, Com. of Kentucky, Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Rodney V. Tapp, Asst. Atty. Gen., Frankfort, for appellee.

Before GANT, HOGGE and HOWER-TON, JJ.

GANT, Judge.

Appellant was convicted of trafficking in heroin and sentenced to 15 years imprisonment as a persistent felony offender. His first assignment of error involves an interpretation of Article IV(e) of the Interstate Agreement on Detainers, 18 U.S.C.A. Appendix 136, 138 (1978), which is KRS 440.-450, Article IV(5). This section provides as follows:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

The facts affording the basis of this argument commenced on December 6, 1975, when the appellant, while under indictment for this charge, escaped from custody about two days before he was scheduled for trial. He was apprehended January 24, 1977, by the FBI and returned to the Fayette County Jail on a fugitive warrant arising from the state charge, a state warrant for escape and a federal charge of aiding and abetting the escape of a federal prisoner. He was brought to trial on the state escape charge within three weeks of arrest, convicted and sentenced to five years in prison. The next week he was convicted in the United States District Court for Eastern Kentucky on the charge of aiding and abetting the escape of a federal prisoner and was also sentenced to five years imprisonment on this charge. After both these convictions, the appellant remained in the Fayette County Jail, a federal prisoner but in the custody of both state and federal authorities.

In April, 1977, the Fayette Circuit Court brought the defendant before that court

pursuant to a writ of habeas corpus ad prosequendum, and a trial was held which resulted in a hung jury. A mistrial was declared and the defendant placed in the custody of the federal authorities, who sent him to the Federal Correctional Institution in Atlanta, Georgia. A detainer was placed against the appellant and he was returned in October, 1977, to face a second trial, from which this conviction resulted.

This consideration of Article IV(e) is a question of first impression before the courts of Kentucky. As we conceive the questions posed, there are two. First, is the writ of habeas corpus ad prosequendum under these circumstances a detainer within the meaning of the Interstate Agreement on Detainers, (hereinafter called IAD)? Second, if it is, does the IAD require final disposition before the prisoner is returned to the federal authorities?

■ The first question had been considered by four separate Circuit Courts of Appeal from the federal side, with an even split among them. However, that split was resolved by the United States Supreme Court in the case of *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). That opinion holds that where the writ of habeas corpus ad prosequendum is issued prior to the detainer, it "is not a detainer within the meaning of the Agreement." However, in a companion case, the court held that had the detainer been filed first, the Agreement was then "triggered" and the subsequent writ required compliance with the agreement. Here, the first situation applied and the writ was not a detainer.

■ Second, it is our opinion that the IAD does not require a final disposition of the case before the prisoner is returned to the federal authorities pursuant to Article V(e) of the IAD, which section requires the prisoner to be returned "[a]t the earliest practicable time." Article IV(e), *supra,* requires a *"trial,"* not a final disposition. The legislative history of the Interstate Agreement on Detainers convinces us that our opinion is correct, which history is set out in *Mauro, supra.* The IAD was fashioned to secure speedy trials of prisoners in state and federal institutions against whom detainers had been filed by foreign jurisdictions. It was discovered that a vast number of the detainers which were filed prior to the act creating this agreement were frivolous and vindictive, for the sole purpose of preventing early release, parole or privileges, and that a large number of these detainers were withdrawn near or at the end of the sentence when notification of pending release was sent to the parties requesting the detainer. In this context, we do not feel that a single detainer is all that is available when a hung jury results. We note that *Mauro* was not factually parallel, as in that case there was no trial at all when the prisoner was first presented before court as a result of the writ of habeas corpus ad prosequendum. In this case, of course, we had a trial and a resulting hung jury.

Once we establish that the purpose of the IAD was to insure a speedy trial and to prevent punitive detainers, we examine the situation here. Even should we feel that the writ of habeas corpus ad prosequendum was a detainer, the appellant herein was granted a speedy trial. Indeed it would have been even speedier had he not escaped. To hold that Article IV(e) would require retaining custody of the prisoner until final disposition would fly in the face of the clear language of the Agreement, which requires only *trial* and not disposition. For example, suppose the prisoner is convicted and returned to the original state of incarceration. Notice of appeal is filed and the conviction is reversed and remanded for a new trial. To hold that a new detainer could not be filed to return him for the second trial would be obvious error. Similarly, a hung jury would result in acquittal of the prisoner if he had been returned to the original institution.

For the reasons above stated, it is the holding of this Court that the Fayette Circuit Court did have jurisdiction over this case.

The second assigned error was the failure of the lower court to suppress the evidence seized in a warrantless search of a vehicle belonging to the appellant. The evidence showed that the officers obtained a search warrant for certain premises which were rented by appellant's brother, the officers having been informed that heroin was being sold from the premises and from a Chrysler automobile. The search warrant did not describe the automobile but did describe, in sufficient detail, the premises which were to be searched. After a search of these premises and of the appellant, who was found therein, produced no heroin, the brother arrived. He was searched and heroin found on his person. The vehicle being driven by the brother at the time of his arrival contained another "considerable quantity of heroin." The keys to the appellant's car were also found, this car being a Chrysler, and this vehicle was searched, without a search warrant or consent from the appellant. Ninety-eight packets of heroin were found in the locked glove compartment of the appellant's car. Appellant urges that there was neither probable cause nor exigent circumstances to justify the search. We do not agree that probable cause was absent. In light of the above evidence, it is our opinion that there was sufficient probable cause for a *proper* search, but we can find no exigent circumstances. There were six officers at the scene, the two men present were under arrest, the officers had the keys to the car in their possession and wreckers were called to tow the vehicles. The law in this state is clearly enunciated in *Middleton v. Common-wealth,* Ky., 502 S.W.2d 517, 519 (1973), in which the court stated as follows:

> In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the court held that even though there may be probable cause for the search of an automobile without a valid search warrant such search would be unconstitutional unless exigent circumstances made it impractical to obtain a warrant.

In this case it is manifestly clear that it was not impractical in any sense of the word for the officers to obtain a warrant, and in fact it was admitted by one of them that they "probably could have" obtained a warrant. This admission alone would not void the search but under the circumstances here it is obvious that a warrant should have been obtained.

The other issue presented by the appellant having been rendered moot by our holding herein, we shall not consider it.

Being unable to find any exigent circumstances to justify the warrantless search of the vehicle herein, the evidence seized therefrom should have been suppressed at trial. Since the conviction herein could not have been obtained without it, the judgment of the lower court is reversed.

All concur.