THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT LEE HOLLEMAN, Defendant-Appellant.

First District (2nd Division)   No. 79-216

Opinion filed March 18, 1980.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Defendant Robert Lee Holleman, indicted on three counts of murder and one count of armed robbery of Scott Moore, was convicted of murder in a bench trial during which he stipulated to the State's evidence and presented none of his own. He was sentenced to 20 years' imprisonment to run concurrently with his sentence then being served on a separate conviction in Indiana involving a separate crime, and other impending sentences which may be imposed upon him by Federal jurisdictions. He appeals from the trial court's denial of his preliminary motions to dismiss, based upon provisions of the Uniform Code of Corrections encompassing the Uniform Agreement on Detainers Act (Ill. Rev. Stat. 1977, ch. 38, par. 1003—8—9) (hereinafter Uniform Agreement) and section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 103—5), the "speedy trial" requirement, respectively. For the reasons given below, we affirm.

The indictments were returned on the stipulated date of July 26, 1977, based upon incidents which allegedly took place in Cook County, Illinois, on October 5, 1976. An arrest warrant for defendant was issued on August 10, 1977, and on March 28, 1978, he was returned to Illinois from imprisonment in Indiana pursuant to the provisions of article IV of the Uniform Agreement. Defendant's trial counsel entered his appearance on April 12, 1978, and thereafter filed, *inter alia*, the two motions to dismiss the indictment previously identified. He alleged that the State had attempted to avoid the dictates of article IV of the Uniform Agreement by deliberately delaying the indictment until 10 months after the alleged crime occurred to gain tactical advantage and failing to return defendant to Illinois from Indiana until nine months after the indictment was returned, thus denying him his statutory right to a speedy trial under the

Uniform Agreement.[1] The motion based upon section 103—5 alleged a total accumulated pretrial delay of 142 days not occasioned by defendant during which he was in custody; that it was the intent of the legislature that subparagraph (f) of the statute, under which such delays would be regarded cumulatively to determine whether a violation had occurred, apply to cases in which the defendant's arrest was "close in time" to the date of the alleged crime; and, consequently, that the terms of the statute had been violated by the State. Defendant also filed a petition for writ of habeas corpus, in which he represented that he had been transferred from Indiana to Illinois without his consent and without benefit of a hearing.

The aforesaid motions and petition were heard by the trial judge immediately prior to defendant's trial on November 6, 1978. A group exhibit tendered to the court, comprised of documents bearing upon defendant's return from Indiana for trial, was stipulated to by the State and defendant as to truth of dates and contents. Though not themselves part of the record on appeal, these documents were presented to the trial court and described as:

(a) the arrest warrant of August 10, 1977;

(b) a request for temporary Cook County custody dated September 13, 1977;

(c) the Indiana document acknowledgment of the arrest warrant dated October 21, 1977;

(d) an Indiana certificate of inmate status;

(e) a Notice of Untried Indictment and of Right to Request Disposition dated October 24, 1977;

(f) approval of defendant's temporary custody in Cook County under the Uniform Agreement signed by the governor of Indiana and dated November 14, 1977;

(g) an offer to deliver temporary custody dated November 25, 1977;

(h) an undated request unsigned by defendant asking Indiana for an extradition hearing and appointment of counsel to see if he should be brought to Illinois.

Though apparently not part of the same group exhibit, also tendered was a document indicating defendant was not brought to Illinois until March 28, 1978.

Following argument on defendant's motion and petition, all were denied. As to defendant's argument based on section 103—5, the court's ruling was grounded on the statutory language used. With respect to the

---

[1] Defendant also alleged constitutional violations of his rights under the fifth and sixth amendments to the United States Constitution in his motion, but does not renew this argument on appeal.

motion to dismiss based upon the Uniform Agreement, the court found that: the delay from October 1976, the time of the alleged occurrences, to July of 1977, the return of the indictment, worked no hardship on defendant, since Illinois would not have been able to obtain his custody during the pendency of criminal proceedings in Indiana; the "red tape" delay from July to December 2, 1977, was connected with the necessity of obtaining the Indiana governor's concurrence; and the delay from December of 1977 to March of 1978, while not representative of good practice, was not sufficient to require application of "the one hundred twenty day rule." The court extended to defendant an opportunity to raise before it the same matters that could have been raised by him at an Indiana extradition hearing had one been provided, which opportunity was refused by defendant. The petition for a writ of habeas corpus was therefore denied.

The cause then proceeded to trial, defendant stipulating to the State's case, the relevant evidence of which follows. Scott Moore was alive on October 5, 1976, and living at 5142 S. Blackstone; subsequently he was killed on that date. His body was discovered in his apartment by Chicago police officers on October 11, 1976. The pathologist's autopsy report and protocol suggested that Moore had been dead five to seven days when found. On or about October 17, 1976, the body of a woman was discovered in Indiana which was identified as Moore's missing common law wife, Robbin Opfer. When later arrested in Indiana, defendant had in his possession various identification cards belonging to Scott Moore. A fingerprint matching defendant's was lifted from a plastic drinking glass on Moore's bedroom nightstand.

During questioning by Indiana authorities, defendant gave several statements, at first admitting his presence in Scott Moore's home but denying complicity in his death and then admitting he contracted with two men in Indiana to "rip off" Scott Moore. Defendant facilitated their entry into Moore's apartment, and during the course of the ensuing robbery Moore was fatally shot. After his companion Robbin Opfer returned to the apartment she was wounded, then taken to Indiana by defendant and the two other men and shot six additional times. Defendant was located by Indiana police through his efforts to sell the stolen automobile that had belonged to Moore and Opfer. In support of this evidence the State presented to the court documents in the form of Indiana and Chicago police reports, statements of defendant and other witnesses, a certified copy of title to the vehicle sold in Indiana and traced to defendant and three photographs of the auto depicting its identification markings.

Defendant presented no evidence and was found guilty of murder by the trial court. After denial of his motion for a new trial, with a sentence

credit back to October 17, 1976, and good time credit provided, sentence was imposed as described above.

The first issue defendant raises on appeal is grounded in the following provisions of section 103—5(a), (f) (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(a), (f)):

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, * * *.

> * * *

> (f) Delay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried as prescribed by subparagraphs (a), (b), or (e) of this Section and on the day of expiration of the delay the said period shall continue at the point at which it was suspended. * * * This subparagraph (f) shall become effective on, and apply to persons charged with alleged offenses committed on or after, March 1, 1977."

Discharge from custody is the pertinent remedy provided for anyone not tried in accordance with the requirement articulated in subsection (a) (Ill. Rev. Stat. 1977, ch. 38, par. 103—5(d)).

■■ Defendant urges that the final sentence of subsection (f) be construed as applicable only where both the alleged crime and the indictment occurred prior to March 1, 1977, endeavoring to secure for himself the substantive provision of (f), that delays not occasioned by him will be cumulatively determined for the entire period from custody to trial, but rejecting the prescribed time limitation of March 1, 1977, for application to offenses committed after March 1, 1977, the murder in the present case having been committed on October 5, 1976. Defendant maintains in this regard and the State does not contest that: after he was delivered into the custody of Illinois authorities on March 28, 1978, delays were occasioned by him from April 12 to April 21; continuances by agreement were granted from May 15 to July 27; the time that elapsed between the last agreed continuance and the trial on November 6, 1978, was 102 days; and the total accumulated time of delays not caused by defendant was 128 days. The pivotal question of whether or not the substantive provision of subsection (f) should apply where the offense occurred prior to March 1, 1977, but indictment and prosecution therefor occurred after the March 1, 1977, cutoff date, has already been answered in the negative by the supreme court in *People v. Donalson* (1976), 64 Ill. 2d 536, 540, 356 N.E.2d 776, which held that with respect to offenses allegedly committed prior to March 1, 1977, a delay occasioned by the defendant tolls the running of the statute, and a new statutory period commences to run from

the date to which the case had been delayed, citing *People v. Lee* (1969), 44 Ill. 2d 161. (Accord, *People v. Daniels* (1979), 76 Ill. App. 3d 646, 649-50, 395 N.E.2d 163; *People v. Day* (1979), 76 Ill. App. 3d 571, 583, 394 N.E.2d 1378; *People v. Hayes* (1977), 48 Ill. App. 3d 459, 462, 363 N.E.2d 84.) None of these cases articulate or imply an additional modification of the March 1, 1977, cutoff date suggested by defendant, nor does he offer any judicial or other authority for his interpretation of the relevant language.

Defendant asserts that since subsection (f) as enacted provides that it "shall become effective on * * * March 1, 1977," it did in fact take effect prior to the indictment and entire prosecution here and therefore should have been applied by the court in determining that the accumulated delay here denied defendant a speedy trial under the statute. The principles of statutory construction stand foursquare against such an interpretation, however. The entire enactment must be considered rather than only a portion of it (*City of East St. Louis v. Touchette* (1958), 14 Ill. 2d 243, 150 N.E.2d 178); specific words in their commonly understood sense are the best indicia of the legislative intent behind it (*Parliament Insurance Co. v. Department of Revenue* (1977), 50 Ill. App. 3d 341, 365 N.E.2d 667); and all the language used must be given effect so as to avoid rendering its provisions meaningless or superfluous (*People v. Meints* (1976), 41 Ill. App. 3d 215, 355 N.E.2d 125). Defendant's reading of subsection (f) requires either that a clear portion of its language be ignored or that an additional qualification be added for which there is no textual or judicial support. Defendant stresses the novelty of the circumstance that the process of charging and prosecution in this case occurred entirely after the March 1, 1977, cutoff date, only the alleged offenses occurring before it; significantly, the legislature explicitly made the latter the controlling factor without any reference to the former.

Defendant alternatively contends that he was denied a speedy trial as contemplated by the relevant provisions of article IV of the Uniform Agreement (Ill. Rev. Stat. 1977, ch. 38, par. 1003—8—9, art. IV(a), (c)), which authorize the appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State be made available for trial in the receiving State, the trial to commence 120 days of the arrival of the prisoner in the receiving State. Dismissal of the indictment is prescribed for noncompliance by the receiving State with the aforesaid 120-day time limitation for commencement of trial (Ill. Rev. Stat. 1977, ch. 38, par. 1003—8—9, art. V(c)). Acknowledging that under the terms of article IV this limitation generally runs from the date of a prisoner's arrival in the receiving State, defendant maintains that the State here circumvented

its intended effect by failing to adequately assure his swift return for trial. He stresses that no explanation was offered by the State for the various delays, as reflected in the documents submitted to the court pursuant to his motions, in obtaining temporary custody of his person for trial. While not in themselves determinative, the number and length of these delays frustrated the spirit and purpose of the Uniform Agreement to effect prompt disposition of charges and thus, according to defendant, should have resulted in dismissal of the indictment.

The two Illinois decisions upon which defendant relies, *People v. Daily* (1977), 46 Ill. App. 3d 195, 360 N.E.2d 1131, and *People v. Wolever* (1976), 43 Ill. App. 3d 25, 356 N.E.2d 611, do not concern article IV but rather article III of the Uniform Agreement, applicable to those cases wherein the prisoner himself initiates the transfer process by sending "* * * to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 1003—8—9, art. III (a).) Where applicable, article III requires a different time limitation for trial and distinct obligations in both the sending and receiving States. In the case at bar defendant not only failed to request disposition of the Illinois charges but also actively opposed extradition to this State through his request for an extradition hearing in Indiana and his petition for writ of habeas corpus to the trial court.

Defendant also refers to several decisions of other jurisdictions which support the principle that a prisoner should not be the victim of noncompliance with or manipulation of the terms of the Uniform Agreement by one or more of the party States, and that the proper result where this occurs is dismissal of the indictment. (*People v. Esposito* (1960), 37 Misc. 2d 386, 238 N.Y.S.2d 460; *State v. Chirra* (1963), 79 N.J. Super. 270, 191 A.2d 308; *Bursque v. Moore* (1966), 26 Conn. Supp. 469, 227 A.2d 255; *Pittman v. State* (Del. 1973), 301 A.2d 509; *Rockmore v. State* (1974), 21 Ariz. App. 388, 519 P.2d 877; *Nelms v. State* (Tenn. 1976), 532 S.W.2d 923.) Of these cases only *Chirra* involved an article IV rather than an article III situation; among the others there is consistent stress upon the inherent unfairness of official frustration of efforts made by the prisoner pursuant to article III of the Uniform Agreement to obtain a speedy determination of pending charges (*e.g., Esposito*, 37 Misc. 2d 386, 394, 238 N.Y.S.2d 460, 466-67; *Pittman*, 301 A.2d 509, 514) and several hold article IV to be inapplicable (*e.g., Rockmore*, 519 P.2d 877, 880; *Pittman*, 301 A.2d 509, 513-14; *Esposito*, 37 Misc. 2d 391, 396, 238 N.Y.S. 460, 469).

In *Chirra*, the receiving State initiated all action to obtain temporary custody of the defendants pursuant to charges pending there. The

defendants were indicted on April 7, 1958. Detainers were filed with the sending jurisdiction on May 8, 1958; on January 14, 1960, the county prosecutor of the receiving State obtained an order for delivery of temporary custody and forwarded it to the sending State on January 26, 1960; and on April 29, 1960, the same county prosecutor informed the sending State authorities that he would not take custody of the defendants until the September 1960 court term because of crowded calendars and an imminent summer recess. No further action to obtain custody was taken by the prosecutor until some 31 months later, in December of 1962. (79 N.J. Super. 270, 271-73.) Under these facts the court found that article IV(c) required "greater sedulity and expeditious action on the part of law enforcement officials * * * than the facts * * * disclose," and concluded in ordering dismissal of the indictments that when prosecuting officials of a party State request temporary custody of a prisoner in another party State for trial, they must continue their effort to obtain delivery of the prisoner from the other State with all reasonable diligence and dispatch and when the prisoner is available for transfer, his custody must be accepted by such prosecuting officials.

In Illinois, the requirement of a trial within 120 days contained in article IV of the Uniform Agreement also "* * * is directly related to expeditious dispositions * * *" (*Neville v. Friedman* (1977), 67 Ill. 2d 488, 492, 367 N.E.2d 1341). Nevertheless, the delay in the present case is distinguishable from the one occurring in *Chirra*. There is no indication in the present case that the State ever refused custody of defendant when proffered by the Indiana authorities; its neglect, if any, was entirely passive.

■■ Defendant correctly avers that the Uniform Agreement is to "* * * be liberally construed so as to effectuate its purposes." (Ill. Rev. Stat. 1977, ch. 38, par. 1003—8—9, art. IX.) The unexplained four-month delay between Indiana's offer to deliver temporary custody of defendant and his return to Illinois cannot be condoned; all such lapses are impairments to the swift disposition of charges pending against a prisoner and his ultimate rehabilitation, both concerns underlying the adoption of the Uniform Agreement. (*Esposito*, 37 Misc. 2d 386, 392, 238 N.Y.S.2d 460, 464-65.) Under the facts before us, however, we cannot regard defendant as a party so aggrieved by want of diligence as to require dismissal of the indictment, nor can we invoke equitable principles to expand upon the express requirements of article IV to his benefit. (*Cf. People v. Wolever* (1976), 43 Ill. App. 3d 25, 30.) Accordingly, the judgment and orders of the trial court appealed from are affirmed.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.