729 P.2d 926

**STATE of Arizona, Appellant, Cross-Appellee,**

v.

**James Robert BURRUS, Appellee, Cross-Appellant.**

**Nos. 1 CA–CR 7051, 1 CA–CR 7139.**

Court of Appeals of Arizona, Division 1, Department B.

May 13, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellant, cross-appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellee, cross-appellant.

JACOBSON, Presiding Judge.

This is an appeal by the State of Arizona from the trial court's March 24, 1983 order dismissing the indictment with prejudice for failure to bring the appellee James Robert Burrus to trial within the time limits imposed by A.R.S. § 31–481. Burrus cross-appeals from the trial court's January 12, 1983 order denying his motion to dismiss. This is the second appeal involving the transfer of Burrus from federal custody to the State of Arizona for trial. *See State v. Burrus*, 134 Ariz. 251, 655 P.2d 371 (App. 1982) (hereinafter *Burrus I*).

This case has followed a long and rocky road to this point. The notice of appeal was filed on April 6, 1983, and the notice of cross-appeal was filed on April 28, 1983. The case came at issue before this court and was taken under advisement on November 13, 1984. On November 21, 1984, Burrus filed a supplemental citation of legal authority citing to *Burrus v. Turnbo*, 743 F.2d 693 (9th Cir.1984). By order of December 4, 1984, this court noted that it had not previously been notified of the permanent injunction from federal district court prohibiting Burrus' return to Arizona for prosecution and questioned whether this case was moot. After further briefing, the matter was again taken under advisement until March 11, 1985, pending a determination of the finality of the federal injunction. The matter was again continued until such time as the United States Supreme Court acted upon a pending petition for certiorari. During the pendency of the United States Supreme Court's proceedings Burrus was released from federal custody on September 27, 1985. On December 9, 1985, the United States Supreme Court vacated the judgment of the circuit court and remanded to district court with instructions to vacate the injunction and dismiss the cause as moot. *Hijar v. Burrus*, —— U.S. ——, 106 S.Ct. 562, 88 L.Ed.2d 548 (1985). This court now notes that while the federal case concerning the injunction is moot, the case before this court is not moot as reversal of the trial court's dismissal of the indictment would allow this case to proceed to trial. The fact that Burrus is not currently in federal prison also does not render this appeal moot.

## INTERSTATE AGREEMENT ON DETAINERS

An overview of the statutory provisions of the Interstate Agreement on Detainers (IAD) is essential to an understanding of the factual background in this case. Both Arizona and the United States are parties to IAD. *See* A.R.S. §§ 31–481 and –482 and 18 U.S.C.App. §§ 1–8 (1985). The IAD was adopted to provide a uniform means of transferring prisoners from the state where they are currently imprisoned (the "sending state") to a state where an indictment is pending (the "receiving state").

There are two possible procedures to effectuate the transfer of a prisoner: (1) prisoner initiated transfers (Art. III of the Act) and (2) receiving state initiated transfers. (Art. IV of the Act). Article III, provides in part:

### ARTICLE III

(a) Whenever a person has entered upon a term of imprisonment in a penal or

correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice* of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. (Emphasis added.)

A.R.S. § 31–481.

Under Article IV of the IAD, set out below, an alternative means is provided by which the receiving state can require the sending state to deliver the prisoner, without the need for the prisoner's acquiescence.

### ARTICLE IV

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: and provided further that there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the prisoner with similar certificates and with notices informing them of the request for custody or availability and of the reasons therefor.

(c) In respect of any proceeding made possible by this Article, *trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state,* but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

\* \* \* \* \* \*

(e) If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or

effect, and the court shall enter an order dismissing the same with prejudice. (Emphasis added.)

A.R.S. § 31–481.

Both Articles III and IV have specific time limits; failure to adhere to those limits requires dismissal with prejudice. *See* A.R.S. § 31–481, Art. V(c). The key distinction in this case is between the 180–day limit of Article III (calculated from the date of receipt of the prisoner's request) and the 120–day limit of Article IV (calculated from the date of the prisoner's arrival in the receiving state).

## FACTUAL BACKGROUND

The facts, taken in the light most favorable to sustaining the order below, are that Burrus was charged by indictment on May 15, 1979, with one count of fraudulent schemes and five counts of forgery. He became a fugitive from justice. Later, the Arizona authorities learned that Burrus was in federal custody awaiting sentencing and placed a detainer against him. On July 3, 1980, the state issued a request for temporary custody of Burrus pursuant to Article IV of the IAD. A.R.S. § 31–481. The state's request for temporary custody could not be honored at that time as Burrus had not yet reached his "permanent resting place" within the federal prison system.

In late October of 1980, Burrus was permanently placed in a federal prison in Colorado. On November 23, 1980, the state received a certified letter from Burrus requesting final disposition of the charges pending against him in Arizona pursuant to Article III of the IAD. This letter was prepared by Burrus personally, not on the forms normally provided in an Article III transfer (forms I and II). On December 5, 1980, the deputy compact administrator for Arizona wrote to the federal authorities sending them a copy of Burrus' letter and requesting that Burrus sign forms I and II. These forms were presented to Burrus, but he refused to fill them out. On January 13, 1981, the state sent a letter to the federal correctional authorities reviewing the situation to date. This letter stated:

We accept Mr. Burrus' request of November 23, 1980 for Disposition of Untried Indictments even though he did not follow proper procedures as outlined in The Agreement on Detainers, Article III, paragraph (b) (A.R.S. § 31–481).

We, therefore, request the forms III and IV be completed and forwarded to us as soon as possible. *Please advise the earliest possible date Mr. Burrus can be released to the custody of the Maricopa County Sheriff's Office to be returned to Phoenix, Arizona for trial purposes.*

Upon receipt of this information, we will execute form VII, Prosecutors [sic] Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer and form VI, Evidence of Agent's Authority to Act for Receiving State. (Emphasis in original.)

On January 19, 1981, the federal correctional authorities sent the state a certificate of inmate status as required by Article III of the IAD. On January 21, 1981, the federal authorities acknowledged the state's December 5, 1980 alternative effort to transfer the prisoner under Article IV. On February 3, 1981, the state sent the forms promised in its letter of January 13, 1981, and stated that the Maricopa County Sheriff's Office would be taking custody of Mr. Burrus on or about February 26, 1981. The Maricopa County Sheriff took custody of Burrus on February 11, 1981. The federal authorities characterized the transfer as an Article IV proceeding.

On May 21, 1981, Burrus filed a motion to dismiss the prosecution arguing that the speedy trial requirements of Rule 8.3(a), Arizona Rules of Criminal Procedure had expired. On May 22, 1981, the trial court granted Burrus's motion and dismissed the prosecution with prejudice. On appeal by the state, this court reversed the trial court's order and remanded the matter for trial. *Burrus I, supra.*

Upon issuance of our mandate, on December 22, 1982, the state again initiated

efforts to return Burrus to Arizona for trial. On January 21, 1983, Burrus filed a motion to dismiss, arguing that the state had failed to bring him to trial within 180 days of his request for final disposition under Article III of the IAD. The trial court denied the motion to dismiss. Burrus made a motion to reconsider and the trial court conducted evidentiary hearings on the matter.

At an evidentiary hearing, the state attempted to establish that the transfer had occurred under Article IV. On redirect examination, the state's representative revealed the state's plan:

Q. Mr. Arbetman, the letter of January 21, Exhibit 13, from the warden states that—frankly, I'm not accepting the warden's personal opinion of what article this is, but he says that your request was received by this office on December 5 and there has to be a 30-day waiting period. Why didn't you get him on January 5? Why are you going through all this business with Mr. Burrus signing Forms 1 and 2?

A. Well, again, I was confused. I talked to Mr. Dickerson about it and we decided to try and go both ways; but if Mr. Burrus would not sign the papers, we would go with Article 4 and that's what we decided. But my understanding was from Mr. Dickerson and what little I knew about the interstate forms and all, but from what I read in the law, it would have been faster to get him here under Article 3 at that time under the posture of the case.

Q. Did you tell Mr. Burrus—

A. That was my opinion.

Q. Did you cause any communication to go to Mr. Burrus to tell him that you were proceeding under both articles?

A. No.

At a later hearing, the deputy contact administrator, Mr. Dickerson, also testified as to the state's objectives:

Q. Did you cause Form 7 to be prepared in this particular case?

A. I did.

Q. Can you explain why you did that?

A. Yes. Mr. Burrus' original request came through for a fast and speedy trial under agreement on detainers. We had—excuse me, Your Honor. I contacted the institution and had requested that Mr. Burrus follow through with the necessary forms and that Arizona was in fact willing to accept him under Article 3. Mr. Burrus refused to send the necessary Forms 1 and 2. He was offered by the sending state to the receiving state under Article 4. I suggested to Mr. Arbetman that we accompany the Form 6 with a Form 7 to indicate our willingness to cooperate with Mr. Burrus even though the form was not in fact necessary.

Q. Why did you feel that you—why did you—could you explain to the court why you felt you needed to do that?

A. Mr. Burrus as I said had in fact requested a fast and speedy trial on his own. There is legal documentation which indicates that in cases where an inmate has requested a fast and speedy trial on his own and the 180 days have lapsed, that the court has upheld the request and it has been dismissed with prejudice. Mr. Burrus' fast and speedy trial came in as I recall somewhere in November the 23rd, which would be approximately 180 days would start running [sic]. We still had time under the 180 days as far as Article 3 was concerned, and I suggested to Mr. Arbetman that we also send the Form 7 to indicate our willingness to cooperate and also to cover ourselves under all circumstances, even though Mr. Burrus was allowed to come to Arizona under Article 4 of the agreement on detainers.

On March 24, 1983, the trial court ruled that Burrus had been transferred to Arizona pursuant to Article III and that the 180-day time limit applied and had expired. The state filed a notice of appeal on April 6, 1983.

The state argues that the trial court erred in dismissing the matter with prejudice for three reasons:

(1) Burrus was transferred to Arizona under the provisions of Article IV of the IAD, not Article III.

(2) The trial court erred by ruling that 180 days had passed.

(3) The pretrial motions filed by Burrus constituted a "continuance" and were excludable from the time limits of the IAD.

## APPEAL BY THE STATE

## SUBSTANTIAL COMPLIANCE WITH ARTICLE III

■ The state urges this court to overturn the determination by the trial court that Burrus had been transferred to Arizona under Article III of the IAD. The state argues that as Burrus failed to fill out forms I and II, his Article III request never became fully operative and Burrus could only be transferred under Article IV. The court notes that the determination of pretrial motions rests with the sound discretion of the trial judge and will not be disturbed on appeal absent a clear showing of abuse of discretion. *State v. Greenawalt*, 128 Ariz. 150, 624 P.2d 828, *cert. denied*, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981). With this standard in mind, the court declines to accept the state's position.

■ Under Article III of the IAD, a prisoner with charges pending in a state other than the one where he is imprisoned may request transfer for final disposition of those charges. To that end, Burrus sent a letter specifically requesting transfer under Article III of A.R.S. § 31–481. This letter was sent to the clerk of the superior court in Maricopa County, to the Arizona Attorney General's Office, and to the warden of the federal institution where Burrus was imprisoned. The letter clearly requests a final disposition of the untried charges against Burrus and sets out the place of his imprisonment, the term of commitment under which he is held, the time already served, the time remaining to be served, and the time of earliest parole eligibility. The letter concludes, "I request

that an attorney be appointed to represent me in any subsequent proceedings regarding the untried Indictment, *or at such time as the State of Arizona takes temporary custody of me under the Interstate Agreement on Detainers Act.*" (Emphasis added.) It is Burrus' position that this letter is in substantial compliance with the requirements of Article III of the Interstate Agreement on Detainers.

Arizona has joined the majority of states and only requires that the petitioning prisoner need "substantially comply" with the procedural requirements of the IAD. *Rockmore v. State*, 21 Ariz.App. 388, 519 P.2d 877 (1974). *See State v. Roberts*, 427 So.2d 787 (Fla.App.1983). As to the degree of compliance necessary:

All that is required of the prisoner is that he give or send written notice and a request for final disposition to the official having custody of him....

21 Ariz.App. at 390, 519 P.2d at 879.

In this case, the determination of whether this was a transfer under Article III or Article IV depends upon the legal consequences and construction of Burrus' letter as well as the subsequent factual actions of the state. Certainly, there are differences between the letter and forms I and II, the usual documents provided to the prisoner. However, the act does not require that the prisoner use any prescribed form, only that he give "written notice." A.R.S. § 31–481, Art. III(a). As to the details of the letter, it should be noted that it complies with the statute in the following important aspects: (1) it specifically requested relief under Article III of the IAD; (2) it requested a final disposition to be made of Burrus' indictment; (3) Burrus sent a copy to the prosecuting officer; (4) Burrus sent a copy to the appropriate court; (5) he sent a copy to the warden; (6) he sent copies via certified mail; (7) he gave notice of the place of his imprisonment; (8) he stated the term of commitment under which he is held; (9) he stated the amount of time already served; (10) the time remaining to be served on the sentence; and finally (11) Burrus stated his parole eligibility.

Form I (Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition) merely informs a prisoner of the pending indictment and of the provisions of the Act. Burrus' letter makes it clear that he is fully advised of his rights and obligations under Article III of the IAD. Accordingly, failure to fill out form I could not deprive Burrus of an opportunity to have substantially complied with the IAD.

Form II (Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaint) requires that a prisoner fill in the appropriate prosecuting officer, the appropriate court, the place of his imprisonment, the indictments pending against him which he requests disposition of, who his counsel is (if any), and that the prisoner sign it. The only aspects in which Burrus' letter fails to parallel form II is that it fails to specify the indictment pending against him and also fails to specify that his request shall be deemed as a waiver of extradition and consent to the production of his body in any court where his presence could be required. While the letter is different from the form in these two respects, Burrus' failure specifically to state the charges in the indictment did not prejudice the state nor ruin the effectiveness of his Article III request. It should also be noted that Burrus did not receive official notice from the warden's office of the detainer and indictment against him until November 26, 1980, three days after his Article III request. As to any question of his intent to waive extradition, the final sentence in his letter makes it clear that Burrus understands that he is giving the state of Arizona the right to take temporary custody of him under the IAD. Further, Article III provides that *any* request for final disposition shall also be deemed a waiver of extradition. A.R.S. § 31–481, Art. III(e). Because of that provision, Burrus' failure to specify that his request be deemed a waiver is immaterial.

The state cites numerous cases where a letter from a prisoner has been found not to be in substantial compliance with the IAD.[1] The state's reliance on cases such as *McBride v. United States*, 393 A.2d 123 (D.C.App.1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979); *Edmond v. Michigan Dept. of Corrections*, 78 Mich.App. 196, 259 N.W.2d 423 (1977); and *Ekis v. Darr*, 217 Kan. 817, 539 P.2d 16 (1975), is misplaced. None of the factual situations presented in these cases provide useful guidance. Indeed, several of these cases, *Edmond* and *McBride*, stand more for the proposition that you cannot have substantial compliance where there is no attempt at compliance, as in *Seymour v. State*, 21 Ariz.App. 12, 515 P.2d 39 (1973). The state has not called the court's attention to any case where the degree of compliance by the prisoner to the technical requirements of Article III of the IAD is analogous to this case. Further, several of the cases cited by the state such as *Edmond* and *Ekis*, also state that *notice* to the proper authorities is a key requirement of substantial compliance. *See also People v. Wolever*, 43 Ill.App.3d 25, 1 Ill.Dec. 423, 356 N.E.2d 611 (1976). Here, not only was the state properly on notice of Burrus' request, but was also aware of the difficulties that it posed.

Finally, this court must consider the state's letter of January 18, 1984, and the testimony heard by the trial judge. These sources make it clear that the state attempted to gain custody of Burrus either under Article III or IV, and that the state took no action to abandon or foreclose either procedure. No provision in the act gives priority to simultaneous requests, though commentators have suggested that in such situations the shorter time limit applies.[2] In any event, the record clearly reveals the state's intent to transfer Burrus under either Article III or Article IV. Under such circumstances, the state must

---

1. For an extensive list of cases discussing substantial compliance, *see* Annot., 98 A.L.R.3d 160 (1980).

2. Comment, *The Detainer System and the Right to a Speedy Trial,* 31 U.Chi.L.Rev. 535 at 554 (1964).

abide by its choice to attempt both procedures at once and to accept Burrus' Article III offer. Confronted with the difficult factual situation presented by this case and the state's awareness of the situation, it cannot be said that it was clearly erroneous to find an effective Article III transfer.

## TIME COMPUTATION

■ The state also argues that 32 days should be excluded from the 180–day period as the delay was at Burrus' request. The state concedes that this excluded time is not strictly a "continuance" under the IAD as it was not granted in "open court" in the presence of the prisoner or his counsel as required by Article III(a), but nevertheless should be excluded as the delay was caused by pretrial motions filed on Burrus' behalf. The state further argues that this case was dismissed on the 180th day and, theoretically, that some fractional part of a day remains in which to start a trial. The court does not reach this additional argument as the court reverses on the question of the excluded continuance time.

The court first notes that our previous opinion, *Burrus I,* dealt solely with the computation of time under Rule 8 under the Arizona Rules of Criminal Procedure and not with any violation of the time limits imposed by the IAD in A.R.S. § 31–481. The court, therefore, addresses this issue based solely upon exclusion of time under the IAD.

Recapping the relevant time period here, *Burrus I* sets out the following events: March 20, 1981, on Burrus' motion, the time for filing pretrial motions was extended to April 20, 1981; March 24, 1981, he filed a motion to suppress; March 26, 1981, Burrus filed a motion in limine and the trial court ordered that pretrial motions be set for hearing on April 10, 1981. The 32 days calculated in *Burrus I* ran from March 19, 1981, to April 20, 1981.

The continuance in question was granted on March 20 at the request of Burrus' counsel for the purpose of allowing more time for pretrial discovery. While this request was not clearly labeled a continuance

under Article III of the IAD, such a requirement in our opinion would amount to exacting form over substance. *Simakis v. District Court,* 194 Colo. 436, 577 P.2d 3 (1978). While this is a question of first impression in Arizona, other states have had to consider whether continuances not made in open court granted for the defendant's benefit toll the 180–day time limit of Article III. A review of the cases reveals that the majority allow tolling of the 180–day time limit regardless of the open court requirement so long as the delay benefits the defendant and is requested by or acquiesced in by the defendant. *Simakis, supra; see also Dennett v. State,* 19 Md. App. 376, 311 A.2d 437 (1973) (where defendant requested a continuance to enable both sides to complete pretrial discovery); *Commonwealth v. Scott,* 219 Pa.Super. 470, 281 A.2d 754 (1971) (where continuance granted because defense counsel was not ready). The *Simakis* case is particularly close to the facts of our case here. In *Simakis,* the district court granted the defendant's request for a ten-day delay in which to file motions in the case. It was held that the request served as a continuance under Article III regardless of the form of such a request. As to the court's reasoning:

> Moreover, the detainer agreement expressly allows for reasonable and necessary continuances to obviate requiring either party to sacrifice adequate trial preparation in order to meet the 180–day limit. Such preparation was clearly the purpose of the delays in this case. A defendant should not be allowed to obtain a dismissal by reason of a delay which he requested simply because a specific label was not attached to the delay when he requested it or the court granted it.

194 Colo. at 438, 577 P.2d at 5.

In this case, the delay served to benefit the defendant's case, as shown by the defense's pretrial motions filed during the period in question. Therefore, we hold that the delay constitutes a continuance under Article III and that the time should have

been excluded from the 180–day limit. Accordingly, the trial court's order is reversed.

## CROSS–APPEAL RETURN TO FEDERAL CUSTODY JURISDICTION

■ Burrus cross-appeals the trial court's denial of his motion to dismiss based upon Article IV(e) of the IAD. The trial court denied this motion on January 12, 1983. On January 13, 1983, Burrus was granted a stay pending a special action of this dismissal. A petition for special action was filed on January 20, 1983. The Arizona Supreme Court declined jurisdiction on February 16, 1983, in *Burrus v. Derickson,* No. 16401–SA.

The IAD provides that if trial is not had on any indictment prior to the prisoner's being returned to the original place of imprisonment, such indictment shall not be of any further force or effect and shall be dismissed with prejudice. Burrus claims that since he was returned to federal custody after the trial court erroneously dismissed the indictment against him, the court erred by not dismissing the state's attempts to bring him to Arizona again. The state responds that this court lacks jurisdiction over this cross-appeal. Technically, the state is correct and moreover, Burrus is not an "aggrieved party" by reason of the trial court's action, he having received a dismissal of the action against him. However, Burrus is entitled to raise this issue on appeal as a "cross-question," that is, an alternate reason for sustaining the trial court's order. On such a cross-question, we reach the merits of the contention.

Burrus' basic contention is that once he was returned to federal custody after the erroneous order of May 22, 1980, dismissing the state prosecution, he could not be transferred back to Arizona under Article IV on the same charges. Article IV(e) provides that if trial is not had on an indict-

ment prior to the prisoner's return to the sending state, then the indictment shall be dismissed with prejudice. The court disagrees with this interpretation of the provision.

In our opinion, the state was not barred from seeking Burrus' return to Arizona because he was returned to federal custody based upon an erroneous order of the trial court. All time since the state's appeal is tolled. *See U.S. v. Roy,* 771 F.2d 54 (2d Cir.1985). Further, the legislative history makes it clear that while the IAD is designed to protect prisoners from unfair detainers, it is not meant to provide them with a means to escape prosecution.[3] Other states have come to the same conclusion. In *Shanks v. Commonwealth,* 574 S.W.2d 688 (Ky.App.1978), the prisoner's first trial ended in a hung jury and the prisoner was transferred back to the "sending state" (the federal authorities). The prisoner argued before the second trial that he could not be returned to the state authorities to face a second trial. The court found that the underlying purposes of the IAD were not violated by allowing a second trial. In our case, the appellee was returned to federal custody to enable him to continue his educational and rehabilitational programs. To hold that a defendant could not be returned would mean that in jurisdictions where the proceedings are delayed by appeals or by second trials, the defendant would be deprived of the programs that the IAD was intended to protect from disruption. Accordingly, the court holds that Burrus' return to federal custody while the state appealed the dismissal did not prohibit his return to Arizona for continued prosecution and accordingly does not now prevent the state from trying Burrus on the original charges.

For the foregoing reasons, the order of the trial court is reversed and this matter remanded for proceedings consistent with this opinion.

CORCORAN and CONTRERAS, JJ., concur.

---

**3.** S.Rep. No. 1356, 91st Cong.2d Sess. 2, *reprinted in* 1970 U.S.Code Cong. & Ad.News 4864, 4865.