OPINION OF THE COURT
Peter M. Leavitt, J.
The defendant has been indicted for the crimes of burglary in the second degree, grand larceny in the fourth degree (two counts), criminal possession of stolen property in the fourth degree (two counts) and criminal possession of a weapon in the fourth degree (seven counts) all of which allegedly occurred in the Village of Rye Brook between August 31, 1992 and September 8, 1992.
The defendant now moves by order to show cause, attorney’s affirmation and reply affirmation for dismissal of the indictment pursuant to CPL 580.20, 210.20 (1) (h) and 210.20 (1) (g). The People’s response consists of an affirmation in opposition, memorandum of law and sur-reply affirmation.
The following facts are undisputed:
As a result of the investigation of the burglary of a house in Westchester County a felony complaint was filed, in which the defendant herein was charged with said crime, on September 21, 1992. Meanwhile, the defendant had been apprehended in Connecticut on September 17, 1992, and charged with the commission of crimes in that State which had predated the New York burglary.
The District Attorney for Westchester County obtained the instant indictment and a warrant thereon, and on November 18, 1992 lodged a detainer in Connecticut pursuant to the Interstate Agreement on Detainers (hereinafter IAD). (CPL 580.20.) The Connecticut charges were disposed of and the defendant began serving a sentence of incarceration therein on January 14, 1993.
On February 4, 1993, the District Attorney sent a "Request *650 For Temporary Custody” to the authorities at the place of the defendant’s imprisonment in Connecticut, pursuant to article IV (a) of the IAD. On March 11, 1993, the defendant filed a "Notice Of Place Of Imprisonment And Request For Disposition [of the instant untried indictment]” (hereinafter Notice And Request) with Connecticut officials for delivery to the District Attorney pursuant to article III (a) of the IAD. The Connecticut authorities simultaneously sent to the District Attorney the defendant’s said Notice And Request and an "Offer To Deliver Temporary Custody”, both of which forms were actually delivered on March 24, 1993.
The defendant was produced in the State of New York, pursuant to the District Attorney’s detainer, on April 16, 1993. On April 20, 1993, the defendant was brought before this court (Hon. Jeanine Pirro, J.C.C., presiding) on the warrant, and the matter was adjourned to April 21, 1993, for assignment of counsel. On April 21st, the defendant was arraigned, entered pleas of not guilty and requested, and was granted, time for the submission of pretrial motions; the People announced their readiness for trial.
The defendant’s pretrial motions, including a motion to inspect the minutes of the Grand Jury proceedings and dismiss the indictment pursuant to CPL 210.30, were served and filed on June 18, 1993. The District Attorney ordered a transcript of the Grand Jury minutes on June 22, 1993, and served and filed its answer to the defendant’s motions on June 24, 1993.
By decision and order of the Hon. John R. LaCava, J.C.C., entered August 5, 1993,[1] this court determined all of the defendant’s motions except for the CPL 210.30 motion; Judge LaCava reserved decision on said motion because the court had not yet been provided with a copy of the Grand Jury minutes for inspection. On August 10, 1993, the defendant appeared with counsel before Judge LaCava, and the case was marked "Ready for Trial”, despite the fact that the CPL 210.30 motion was still undecided. The Grand Jury minutes were provided to Judge LaCava on September 22, 1993, and, by supplemental decision and order entered October 5, 1993, he denied the motion to dismiss following inspection.
Defendant’s counsel was actually engaged on other criminal matters before other Judges of this court on nine days be *651 tween October 5, 1993 and December 31, 1993. Counsel was also actually engaged in another criminal matter before Judge LaCava on six days during said period.
The indictment herein was transferred to this Part as of January 3, 1994. On January 10, 1994, the defendant’s case was called for conference during which defense counsel advised this court and the District Attorney that the indictment must be dismissed for failure to commence trial in timely fashion pursuant to the IAD. The defendant’s written motion for such relief was served on January 20, 1994.
Finally, counsel was actually engaged on another criminal matter, before Judge LaCava, from January 3, 1994 to February 3, 1994. At no time was the defendant’s case called for the commencement of trial or pretrial hearings, and no adjournments or continuances were requested or granted in open court after August 5,1993.
The IAD, to which the State of New York is a signatory (CPL 580.20), is an interstate compact which provides specific time periods in which a prisoner who is serving a sentence of imprisonment in one jurisdiction — i.e., the "Sending State” (CPL 580.20, art II [b]) — must be brought to trial on an indictment in another jurisdiction — i.e., the "Receiving State” (CPL 580.20, art II [c]). The determination of which time period applies, as well as the date on which such period commences, is dependant upon who initiates the process by which the Receiving State obtains custody of the prisoner.
Thus, if the prisoner is produced in the Receiving State pursuant to his request for final disposition of an untried indictment pending in such State he must be brought to trial within 180 days (CPL 580.20, art III [a]), and the period is measured from the date of actual delivery of the prisoner’s request to the appropriate court and prosecutorial authorities of the Receiving State (Fex v Michigan, 507 US —, 113 S Ct 1085 [1993]).[2] Whereas, if the prisoner is produced pursuant to *652 the prosecutor’s Request For Temporary Custody trial must be commenced within 120 days, measured from the date of his arrival in the Receiving State. (CPL 580.20, art IV [c].) This case presents a rather unusual scenario in that the defendant and the District Attorney herein each sought to initiate the process by which the defendant was, ultimately, produced in New York.
While the statute itself provides no guidance, the People argue that the article III period applies whenever a prisoner files a request for final deposition regardless of whether a prosecutor’s request is also filed or which is filed first. The People cite no statutory or judicial authority for this construction other than the drafters’ use of the word "whenever” in the language of article III (a), to wit: "Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment” (emphasis added).
The court finds this proposed construction to be both inventive and intriguing, but entirely unpersuasive and contrary to the IAD’s own statutory directive that its provisions "shall be liberally construed so as to effectuate its purposes”. (CPL 580.20, art IX [1]; see also, People ex rel. Kendall v Follette, 47 AD2d 546 [2d Dept 1975].) Rather, given its normal meaning in the context of its usage, the word "whenever” describes the circumstances under which a prisoner may invoke the mandates of article III by filing a request for disposition (cf., People v Reilly, 136 AD2d 355 [2d Dept 1988]); it does not indicate a preference for the invocation of article III over, or to the exclusion of, article IV. Indeed, although the issue seems never to have been addressed in any reported decision of a court of this State, those courts of other jurisdictions which have addressed it have declined, as does this court, to construe the IAD so as to give priority to a request made pursuant to one article to the exclusion of one made pursuant to the other. (See, e.g., Price v State, 237 Ga 352, 370-371, 227 SE2d 368 [1976]; Pittman v State, 301 A2d 509 [Del Sup Ct 1973].)[3]
*653 Since both arguably apply, the sounder practice, by far, is to compute the period of delay under each article to determine whether either has been violated. In any event, the result would be the same pursuant to either computation in the circumstances herein.
The making of a motion to dismiss for a violation of the IAD tolls the applicable time period while the motion is pending. (United States v Dawn, 900 F2d 1132, 1136 [7th Cir 1990].) The instant motion was made on January 20, 1994— i.e., 302 days since the defendant’s request was delivered, thereby invoking article III, on March 24, 1993, and 279 days since the defendant’s arrival in New York, pursuant to the District Attorney’s request under article IV, on April 16, 1993. Thus, the defendant has alleged a delay in excess of the period of time in which trial must commence under either article, and the burden now shifts to the People to show that any particular period should be excluded from the computation. (CPL 210.45 [4]; cf., People v Berkowitz, 50 NY2d 333 [1980].)
So far as is relevant herein, there are two bases upon which a period of delay is tolled and excludable under the IAD, and they apply regardless of whether the periods are computed pursuant to article III or IV. To wit: "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance” (CPL 580.20, art III [a]; art IV [c]), and "the running of said time period shall be tolled whenever and for as long as the prisoner is unable to stand trial” (CPL 580.20, art VI [a]).
Clearly, there were no excludable periods prior to April 20, 1993, the date on which the defendant first appeared before Judge Pirro. Just as clearly, the continuance to April 21, 1993, for the assignment of counsel, which was granted in open court in the defendant’s presence, was both reasonable and necessary and is excludable pursuant to article III (a) and article IV (c).
*654 On April 21st, the defendant requested and was granted time to bring motions. A defendant is "unable to stand trial”, within the meaning of article VI (a), for any period required for the submission, consideration and determination of his pretrial motions. (United States v Roy, 771 F2d 54, 59 [2d Cir 1985].) Unlike a continuance, however, a period of delay which is occasioned by a defendant’s inability to stand trial is excludable only "for as long as” the actual duration of such disability. (CPL 580.20, art VI [a]; see also, Birdwell v Skeen, 983 F2d 1332, 1341 [5th Cir 1993]; People v Torres, supra, at 128.) Thus, the period of exclusion occasioned by the defendant’s motion practice, herein, terminated on the date of the court’s decision, not on the date on which the case was next called in open court after the decision.
Furthermore, where a defendant has moved for inspection and dismissal pursuant to CPL 210.30, the prosecution must produce the Grand Jury minutes for the court’s inspection within a "reasonable time” calculated from the date of the defendant’s motion. (People v Harris, 82 NY2d 409, 413 [1993].) The People’s failure to meet this obligation constitutes an "insurmountable impediment” to trial, and any period in excess of what is "reasonable” is not excludable. (See, People v McKenna, 76 NY2d 59, 64 [1990].) It is irrelevant whether the People’s efforts to produce the minutes were undertaken in good faith or their failure to meet their obligation was due to negligence. (People v Harris, supra, at 412.)
In the instant case the People had failed to provide the court with the Grand Jury minutes as of the date of Judge LaCava’s first decision — i.e., August 5, 1993 — in which he determined all of the defendant’s motions except for the one made pursuant to CPL 210.30. This was a period of 48 days since the motion was interposed; more than a reasonable time for the People to produce the minutes. (See, e.g., People v Harris, supra [36 days]; People v Torres, 111 AD2d 281 [2d Dept 1985] [21 days].) Therefore, the period from April 21, 1993 to August 5, 1993 — i.e., 106 days — only, is excludable due to the defendant’s inability to stand trial for the submission, consideration and determination of his pretrial motions. (CPL 580.20, art VI [a].)
The People also argue that a total of 15 days, between October 5, 1993 and December 31, 1993, and 16 days, between January 3, 1994 and January 19, 1994, is excludable under article VI (a) because the defendant’s attorney was actually engaged on other criminal matters. However, a defendant is *655 "unable to stand trial” only for those periods of delay occasioned by the defendant himself. (See, United States v Roy, supra.) Thus, such periods of delay which result from matters not within the defendant’s control — such as court scheduling —are not excludable. (See, People v Collins, 82 NY2d 177 [1993].) Since the scheduling of criminal proceedings — whether pertaining to his own case or to those of other defendants whom his attorney happened to represent — was not within the control of the defendant herein, the periods of delay attributable to his attorney’s engagement on other matters were not occasioned by the defendant and, therefore, are not excludable. (See, Stroble v Anderson, 587 F2d 830 [6th Cir 1978] [defendant not "unable to stand trial” while he was actually being tried on another indictment].)[4]
There are no other periods which are excludable from the total period of delay under article III — 302 days — or article IV —279 days. Subtracting the total excludable period — i.e., 107 days — leaves a period of 195 days since the defendant’s Notice And Request was actually delivered to the District Attorney or 172 days since he was produced in New York pursuant to the District Attorney’s Request For Temporary Custody. Thus, the commencement of trial of the instant indictment hereafter would violate the IAD whether the period of delay is computed pursuant to the provisions of article III (a) or article IV (c).[5]
Accordingly, for all of the foregoing reasons, the defendant’s motion is granted in its entirety and the indictment must be, and is hereby, dismissed with prejudice. (CPL 210.20 [1] [h]; 210.45 [4].) The defendant is hereby discharged from the *656 temporary custody of the New York State Department of Correctional Services (CPL 210.45 [8]), effective upon his return to the custody of the Cheshire Correctional Facility in the State of Connecticut (CPL 580.20, art V [d], [e]).

. The case had been transferred to Judge LaCava upon Judge Pirro’s resignation from the Bench.

. The courts of this State, and other jurisdictions, had long interpreted the "caused to be delivered” language of article III (a) to commence the 180-day period upon the date on which the prisoner placed his Notice And Request in the hands of the proper authorities in the Sending State. (See, e.g., People v Torres, 60 NY2d 119, 123 [1983]; People v Walker, 113 AD2d 448 [4th Dept 1985]; People v Pellegrino, 131 Misc 2d 118, 121 [Sup Ct, Westchester County 1986].) However, since the IAD implicates neither the fundamental nor constitutional rights of a prisoner (see, People v Cusick, 111 AD2d 251 [2d Dept 1985]), and construction of its provisions is governed by Federal law (Cuyler v Adams, 449 US 433 [1981]), the Supreme Court’s *652 recent decision in Fex v Michigan (supra) leaves no doubt nor room for debate that the article III (a) time period commences on the date of actual delivery to the court and prosecutor in the Receiving State.

. Moreover, if the court were to make such a choice, logic dictates that *653 the provisions of article IV would be controlling in these circumstances. The District Attorney invoked article IV when the Request For Temporary Custody was sent on February 4, 1993, while the defendant did not invoke article III until his Notice And Request was actually delivered on March 24, 1993 — i.e., seven weeks later. Also, Connecticut’s Offer To Deliver Temporary Custody was sent simultaneously with the defendant’s request and, obviously, in response to the District Attorney’s request. Thus, the proceeding which began with the defendant’s appearance before Judge Pirro on April 20, 1993, was "made possible” by the District Attorney’s invocation of article IV. (CPL 580.20, art IV [c].)

. The People’s reliance on People v Lambert (92 AD2d 550 [2d Dept 1983]) is misplaced. Lambert is, apparently, the only reported decision of a court of this State to have addressed the issue. However, it appears to have been premised on the trial scheduling system in which a Trial Court Judge was prohibited from commencing a trial in which the defendant’s attorney was also counsel in another criminal matter which had been marked "standby”. That system is no longer in use in this County, and the recent decisions of the Court of Appeals in People v Smith (82 NY2d 676 [1993]) and People v Collins (supra) concerning the nonexcludability of delays occasioned by court scheduling, would seem to have rendered Lambert a complete anomaly, limited to its own facts. In any event, unlike the Trial Court Judge in Lambert there was no reason a Judge of this court could not have called the defendant’s case for commencement of trial at any time after October 5,1993.

. Indeed, even if the 31 days on which the defendant’s attorney was otherwise actually engaged were to be excluded, commencement of trial would still violate article IV (c) by 21 days as of January 20, 1994.