150 P.3d 241

STATE of Arizona, Appellant,

v.

Nora Marie GALVEZ, Appellee.

No. 1 CA–CR 05–1229.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 19, 2006.

Andrew P. Thomas, Maricopa County Attorney by E. Catherine Leisch, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Susan Sherwin, Office of the Legal Advocate by Kerri L. Chamberlin, Deputy Legal Advocate, Phoenix, Attorneys for Appellee.

**OPINION**

ACETO, Judge.*

¶ 1 When Arizona charges are pending against a person imprisoned in another jurisdiction, the prisoner may demand transfer to Arizona pursuant to the Interstate Agreement on Detainers ("IAD" or "Act"). Compliance with the IAD triggers certain time limits. The question presented in this appeal is whether Nora Marie Galvez, a prisoner, complied with the requirements of the IAD.

*THE IAD*

¶ 2 The IAD is an intergovernmental compact that establishes procedures for resolution of one state's outstanding charges against a prisoner of another state. The United States, Arizona and 47 other states are parties to the IAD. *New York v. Hill,* 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). In Arizona, the provisions of the IAD are codified in A.R.S. § 31–481 (2002).

¶ 3 In any matter covered by the IAD, there are three interested parties: the prisoner, the sending state and the receiving

state. A.R.S. § 31–481. The IAD provides procedures for two different types of transfers. Article III of the Act pertains to prisoner initiated transfers. *Id.* Article IV of the Act pertains to transfers initiated by the receiving state. *Id.*

¶ 4 A review of Article I of the IAD makes clear that the Act is designed to confront inherent difficulties in resolving charges against prisoners incarcerated in other jurisdictions. The purpose of the IAD is "to encourage the expeditious and orderly [resolution] of such charges" through the adoption of uniform cooperative procedures. *Id.*

¶ 5 The IAD is not one-sided. It imposes requirements on both the government and the prisoner. For example, if the requirements of the IAD have been satisfied, a prisoner must be tried within certain prescribed time limits, and the failure to do so results in mandatory dismissal of the pending charges. *Id.* at arts. III, V(c). But a prisoner also has certain obligations under the IAD. *Id.* at art. III(a), (b). If these obligations are not satisfied, the time limits of the Act never begin to run.

¶ 6 The first step in any Article III transfer is a written prisoner request. *Id.* Paragraph (a) of Article III provides that a prisoner shall cause "to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the [charges against him]." *Id.* Paragraph (a) further provides:

The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of

* The Honorable Mark Aceto, a judge of the Maricopa County Superior Court, was authorized by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this appeal pursuant to the Arizona Constitution, Article 6, Section 3, and Arizona Revised Statutes ("A.R.S.") sections 12–145 to 147 (2003).

the state parole agency relating to the prisoner.

*Id.*

¶ 7 Paragraph (b) of Article III provides: The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

*Id.*

¶ 8 Rule 8.3 of the Arizona Rules of Criminal Procedure ("Rule") establishes speedy trial time limits for any person incarcerated outside Arizona. This rule is intended to supplement the provisions of the IAD. Ariz. R.Crim. P. 8.3(a) cmt.; *State v. Loera,* 165 Ariz. 543, 545, 799 P.2d 884, 886 (App. 1990). The Rule provides that Arizona officials shall take action "as required by law" to obtain temporary custody of the out-of-state prisoner within 90 days of receipt of a written request. Ariz. R.Crim. P. 8.3(a). Further, within 90 days thereafter, this Rule requires that the prisoner be brought to trial. *Id.*

## FACTUAL BACKGROUND

¶ 9 In May 2004, the State charged Galvez with possession of dangerous drugs for sale, a class 2 felony. Galvez posted bond and was released from custody pending trial. In July, Galvez was arrested in Texas on federal charges and held in federal custody. Two months later, the superior court vacated Galvez's trial date on the Arizona charges and issued a bench warrant.

¶ 10 In federal court, Galvez was convicted of conspiracy to distribute methamphetamine and sentenced to a prison term. While in federal prison, Galvez wrote a letter requesting that she be brought to Arizona to face the unresolved Arizona charges.

¶ 11 Galvez sent her letter to the judge presiding over her Arizona case. She did not, however, send a copy of the letter to the Arizona prosecutor, nor did she send a copy of the letter to the federal official who had custody of her.

¶ 12 Galvez's letter is dated January 25, 2005, but the letter was not sent via registered or certified mail. Therefore, it is impossible to know precisely when the letter was mailed or received in Arizona.

¶ 13 In her letter, Galvez noted that she had been sentenced to a 51–month federal prison term. She did not, however, identify the prison within which she was being held. She also did not provide information about any of the following: the amount of time she had already served; the amount of time remaining to be served; the amount of good time she had earned; information regarding when she would become parole eligible; or information regarding decisions made on any of her parole requests. Further, Galvez's letter was not accompanied by a certificate of the custodial federal official, nor by any other document prepared by that official.

¶ 14 On February 10, 2005, the assigned judge issued a minute entry. In its entirety, the minute entry stated:

> The Court is in receipt of a letter from the defendant requesting that she be brought to this jurisdiction from apparent federal custody for her pending case in this court. By this minute entry the court is informing the Maricopa County Attorney's Office of the defendant's case.

¶ 15 On October 13, 2005, the superior court appointed an attorney to represent Galvez. This attorney filed a motion to dismiss the pending Arizona charges on the basis that the State had violated the speedy trial time limits set forth in the IAD and Rule 8.3(a). Following oral argument, the court found that Galvez had substantially complied with the IAD, and, because the State failed to timely try Galvez on the Arizona charges, it dismissed the indictment with prejudice. The State timely appealed.

## DISCUSSION

¶ 16 The State argues that the superior court erred in dismissing the indictment because Galvez did not substantially comply with Article III of the IAD. "We review an order granting a motion to dismiss

criminal charges for an abuse of discretion or for the application of an incorrect legal interpretation." *State v. Lemming,* 188 Ariz. 459, 460, 937 P.2d 381, 382 (App.1997). Because this case presents a question of law, we review the court's application and interpretation of the IAD de novo. See *State v. Getz,* 189 Ariz. 561, 563, 944 P.2d 503, 505 (1997).

¶ 17 The IAD expressly recognizes that the orderly disposition of charges against a prisoner held in another jurisdiction would be impossible without compliance by all interested parties with uniform, cooperative procedures. A.R.S. § 31–481, art. I. Among other requirements, the IAD mandates the following: (1) the prisoner must prepare a written request for final disposition of the pending charges; (2) the prisoner must include in the written request the place of imprisonment; (3) the prisoner must send the request to the warden having custody of the prisoner; (4) the prisoner must cause the request to be delivered to the prosecutor in the receiving state and to the appropriate court of that same state; (5) the prisoner's request must be sent to the receiving state's prosecutor and court by registered or certified mail, return receipt requested; (6) the prisoner's request must be accompanied by a certificate of the out-of-state official having custody of the prisoner; and (7) the certificate of the out-of-state official must include certain specified information, i.e., term of imprisonment, time served, time remaining to be served, good time credit earned, date of parole eligibility and any parole agency decisions regarding the prisoner. *Id.* at art. III(a).

¶ 18 Although strict compliance with the IAD is not required, substantial compliance is necessary. *State v. Burrus,* 151 Ariz. 572, 577, 729 P.2d 926, 931 (App. 1986). Further, the prisoner bears the burden of demonstrating substantial compliance with the Act. *See United States v. Moline,* 833 F.2d 190, 192 (9th Cir.1987).

¶ 19 Although no Arizona case provides a comprehensive explanation of what constitutes substantial compliance in the context of the IAD, other cases are instructive. "Substantial compliance" generally means that the information provided has satisfied the purpose of the relevant statute. *See Feldmeier v. Watson,* 211 Ariz. 444, 447, ¶ 14, 123 P.3d 180, 183 (2005). For example, when a statute is designed to protect a party, a relevant inquiry is whether the failure to comply strictly with the statute prejudiced that party. *Aesthetic Prop. Maint., Inc. v. Capitol Indem. Corp.,* 183 Ariz. 74, 78, 900 P.2d 1210, 1214 (1995). A proper substantial-compliance test should give "meaning to every part of the statute" without producing unduly harsh results. *Id.* (quoting *Jones v. Short,* 696 P.2d 665, 667 (Alaska 1985)). Although the required information need not be provided in any particular form, the phrase connotes that the required information has been provided in some form. *See State v. Harrison,* 195 Ariz. 1, 4, ¶ 13, 985 P.2d 486, 489 (1999).

¶ 20 An out-of-state prisoner and the prisoner's warden have better access to the details about the prisoner's confinement than the receiving state. Accordingly, the IAD places the burden on the prisoner and the sending state to provide specifically enumerated information to the receiving state. Thereby, the IAD protects the receiving state from having to investigate the prisoner's out-of-state confinement.

¶ 21 *Burrus* is in harmony with the above-stated considerations. In *Burrus,* the prisoner provided the person having custody of him essentially all of the information required by the IAD. 151 Ariz. at 577, 729 P.2d at 931. The prisoner also provided this information to the Arizona prosecutor and the Arizona court. *Id.* Under the circumstances, the fact that the prisoner had not filled out government-prescribed forms did not prevent a finding that he had complied with the IAD. *Id.* at 578–79, 729 P.2d at 932–33.

¶ 22 The IAD expressly requires that the prisoner provide the request for final disposition to the official having custody of the prisoner. If the prisoner has failed to do so, there is no substantial compliance. *See Rockmore v. State,* 21 Ariz.App. 388, 390, 519 P.2d 877, 879 (1974).

¶ 23 A lengthy prison sentence in another jurisdiction might dissuade the receiving

state from pursuing prosecution. Accordingly, the IAD mandates that the receiving state be provided not only with the out-of-state term of commitment but also with information regarding time served, time remaining to be served, good time credit earned, date of parole eligibility, and any parole agency decisions regarding the prisoner. A.R.S. § 31–481, art. IV(a). An attachment to Galvez's letter included the term of commitment, but Galvez provided none of the other information demanded of her by the Act.

¶ 24 The IAD requires that the prisoner give written notice of the place of confinement. *Id.* By relieving the receiving state of the burden of investigating the prisoner's actual place of confinement, this requirement gives the receiving state a fair opportunity to comply with the Act's time limits. An attachment to Galvez's letter included the federal sentencing judge's recommendation that Galvez serve her sentence at "F.P.C. Bryan, Texas", but Galvez's letter did not include a return address and Galvez never identified the actual place of her imprisonment.

¶ 25 Citing *Rockmore,* Galvez advocates a liberal substantial-compliance standard. The court in *Rockmore* suggests that a prisoner who has done nothing more than provide a request for final disposition to the official having custody of the prisoner has substantially complied with the IAD. 21 Ariz.App. at 390–91, 519 P.2d at 879–80. Galvez did not provide her request to the warden. Therefore, this suggestion in *Rockmore* is not persuasive. Further, the relaxed application of substantial compliance as advocated in *Rockmore* is inconsistent with traditional substantial-compliance criteria. Indeed, to the extent *Rockmore* supports Galvez's substantial-compliance argument, its continuing vitality is questionable in light of *Fex v. Michigan,* 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). In *Fex,* based on the "shall have caused to be delivered" language of the IAD, the United States Supreme Court rejected the policy argument that fairness "requires the burden of compliance with the requirements of the IAD to be placed entirely on the law enforcement officials involved." *Id.* at 52, 113 S.Ct. 1085.

¶ 26 There is no evidence that Galvez sent her request to the warden having custody of her. Further, she provided Arizona officials with only a small portion of the information required by the IAD. A substantial-compliance finding in this case could be made only by ignoring specific textual requirements and would fail to give meaning to every part of the Act. Further, the IAD not only protects receiving states from the burden of investigating details regarding confinements of out-of-state prisoners, it also protects receiving states from having to do so within the confines of IAD time limits. Thus, a substantial-compliance finding in this case would also eviscerate these protections. Galvez has not substantially complied with the IAD.

¶ 27 The Rule 8.3 speedy trial time does not start until the prosecutor is "required by law" to take action to obtain an out-of-state prisoner's presence for trial. Because Galvez never substantially complied with the IAD, the prosecutor was never "required by law" to bring Galvez to Arizona, and the Rule 8.3 clock never started running.

### CONCLUSION

¶ 28 We conclude that the superior court erroneously found that Galvez substantially complied with the IAD. Accordingly, we vacate its order dismissing the indictment, reinstate the charges, and remand for proceedings consistent with this opinion.

PATRICK IRVINE, P.J., and SUSAN A. EHRLICH, J., concur.