162 P.3d 680

**STATE of Arizona, Appellant,**

v.

**Eric Brandon ALMLY, Appellee.**

**No. 1 CA–CR 06–0471.**

Court of Appeals of Arizona, Division 1, Department A.

July 31, 2007.

Andrew P. Thomas, Maricopa County Attorney By E. Catherine Leisch, Deputy County Attorney, Phoenix, Attorneys for Appellant.

James Haas, Maricopa County Public Defender By Louise Stark, Deputy Public Defender, Phoenix, Attorneys for Appellee.

## OPINION

OROZCO, Judge.

¶1 The State of Arizona appeals the trial court's order dismissing the charge of Fraudulent Schemes and Artifices against Eric Almly (Defendant) with prejudice for failure to comply with the speedy trial provisions of Article III of the Interstate Agreement on Detainers (IAD). For the following reasons, we affirm.

## INTERSTATE AGREEMENT
## ON DETAINERS

¶2 The IAD, Arizona Revised Statutes (A.R.S.) section 31–481 (2002), is an interstate compact adopted by this state, the federal government and forty-seven other states to provide uniform standards for transferring prisoners incarcerated in one state (sending state [1]) to a different state where there are outstanding charges pending against the prisoner (receiving state [2]). *See State v. Galvez*, 214 Ariz. 154, 155, ¶2, 150 P.3d 241, 242 (App.2006); *State v. Burrus*, 151 Ariz. 572, 573, 729 P.2d 926, 927 (App.1986). Transfer of a prisoner under the IAD may be initiated under Article III, whereby the prisoner requests a trial on outstanding charges in the receiving state, or under Article IV, whereby the receiving state requests temporary custody of the prisoner to bring him to trial.

¶3 Under Article III(a), the prisoner must send a notice both to the prosecutor and the court in the receiving state informing them where he is imprisoned and requesting final disposition of the outstanding charges. A.R.S. § 31–481, art. III(a). The notice must also include a certificate by an official from the sending state that states: the prisoner's term of commitment, the amount of time already served and any time remaining; any good time earned; and when the prisoner is eligible for parole and any decisions related to the prisoner by the state parole agency. *Id.* Procedurally, the prisoner forwards the written notice and request for final disposition to an appropriate prison official where he is incarcerated, "who shall promptly forward it together with the certificate" to the prosecutor and court in the receiving state by registered or certified mail, return receipt requested. *Id.* at (b). Upon receiving this notice, the receiving state must commence trial of the prisoner within 180 days. *Id.* If the receiving state does not try the prisoner within 180 days, the court is required to dismiss the outstanding charges with prejudice. A.R.S. § 31–481, art. V(c).[3]

¶4 Article IV applies when a prosecutor in a receiving state presents "a written request for temporary custody ... to the appropriate authorities of the state in which the prisoner is incarcerated: provided that the court having jurisdiction of such indictment ... shall have duly approved, recorded and transmitted the request." A.R.S. § 31–481, art. IV(a). Any trial "made possible by" Article IV must be commenced within 120 days of the arrival of the prisoner in the receiving state. *Id.* at (c). If the trial is not commenced within 120 days, the court is required to dismiss the outstanding charges with prejudice. A.R.S. § 31–481, art. V(c).

■ ¶5 The purpose of the IAD is "[t]o implement the right to a speedy trial and to minimize the interference with a prisoner's treatment and rehabilitation." *U.S. v. Sorrell*, 562 F.2d 227, 229 (3rd Cir.1977) (citation omitted); *see also* A.R.S. § 31–481, art. I ("[T]he purpose of this agreement [is] to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments.").

1. "Sending state" is defined as "a state in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to Article III hereof or at the time that a request for custody or availability is initiated pursuant to Article IV hereof." A.R.S. § 31–481, art. II(b).

2. "Receiving state" is defined as "the state in which trial is to be had on an indictment, information or complaint pursuant to Article III or Article IV hereof." A.R.S. § 31–481, art. II(c).

3. By invoking Article III, the prisoner waives any objections to extradition. A.R.S. § 31–481, art. III(e).

## FACTS AND PROCEDURAL HISTORY

¶ 6 We view the facts in the light most favorable to sustaining the trial court's decision. *See Burrus*, 151 Ariz. at 575, 729 P.2d at 929. The following timeline sets forth the relevant facts necessary to resolve this appeal.

¶ 7 May 30, 2002: A grand jury in Arizona indicted Defendant on one count of Fraudulent Schemes and Artifices.

¶ 8 March 10, 2003: Defendant failed to appear for a hearing on the charge against him, and the court issued a bench warrant for his arrest.

¶ 9 January 26, 2005: After being arrested in San Diego on unrelated charges, Defendant was sentenced to a prison term of twenty-four months in California.

¶ 10 February 3, 2005: The Maricopa County Sheriff's Office (MCSO) informed the San Diego County Sheriff's Office of the pending Arizona arrest warrant for Defendant and requested a "detainer" be placed on Defendant. California authorities notified Defendant shortly thereafter that Arizona had filed a detainer against him.

¶ 11 March 9, 2005: The Maricopa County Attorney's Office (MCAO) received a letter from the Arizona Governor's Extradition Officer, stating Defendant had been imprisoned in California at the R.J. Donovan Correctional Facility (Donovan) and MCAO could pursue custody of him pursuant to the IAD.

¶ 12 March 10, 2005: Pursuant to Article III of the IAD, Defendant requested a speedy trial and final disposition on the pending charges against him in Arizona (First Article III Request). Defendant attached Form I [4] and Form II [5] to his request, which bore the date of March 10. Both

Defendant and authorities at Donovan signed the request and the accompanying documents. Defendant believed the California prison would mail the First Article III Request and accompanying documents to the proper authorities in Maricopa County, but he also mailed a separate copy of his request and Forms I and II to the Maricopa County Superior Court by regular mail. The documents Defendant personally sent are the only documents in the record on appeal. The State disputes whether the First Article III Request contained all of the information required by the IAD.

¶ 13 March 16–18, 2005: MCAO wrote a letter to Donovan, dated March 16, requesting temporary custody of Defendant pursuant to the IAD. MCAO attached Form V [6] to the letter, indicating MCAO's intention to proceed pursuant to Article IV of the IAD. Form V was signed by the court on March 18, 2005. There is no evidence in the record whether or when Donovan received this letter, but it could not have been mailed before March 18, 2005, the date the court signed the form.

¶ 14 March 23, 2005: MCAO received Defendant's First Article III Request, after it was forwarded by the Maricopa County Superior Court, which received it one week earlier.

¶ 15 March 30, 2005: Defendant signed a second request, pursuant to Article III, requesting final disposition on the pending charges against him in Arizona (Second Article III Request).

¶ 16 April 29, 2005: Arizona Department of Corrections (ADOC) sent a letter to Donovan and attached Form VI [7] and Form VII, [8] stating MCAO would take custody of Defen-

---

4. To facilitate proceedings under the IAD, standard forms were adopted by the Council on State Governments. *See Casper v. Ryan*, 822 F.2d 1283, 1285 n. 2 (3rd Cir.1987); *State v. Pero*, 370 N.J.Super. 203, 851 A.2d 41, 43 n. 3 (Ct.App.Div. 2004). Form I of the IAD is entitled, "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition."

5. Form II of the IAD is entitled, "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints."

6. Form V of the IAD is entitled, "Request for Temporary Custody."

7. Form VI of the IAD is entitled, "Evidence of Agent's Authority to Act for Receiving State."

8. Form VII of the IAD is entitled, "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Disposition of a Detainer."

dant between April 25 and May 5, 2005. Form VII demonstrated MCAO's willingness to accept "temporary custody" of Defendant and was signed by MCAO on March 28, 2005. Form VII also included a statement signed by the court on March 30, 2005, that the person making the request was authorized to do so pursuant to Article IV of the IAD. Donovan subsequently informed MCSO that it lost these documents.

¶ 17 May 5, 2005: MCAO received Defendant's Second Article III Request. The State concedes the Second Article III request included all information required by the IAD.

¶ 18 May 24, 2005: ADOC sent a second letter to Donovan, and included Form VI stating that MCAO would take custody of Defendant between June 13 and June 23, 2005. ADOC also included another Form VII, which included a statement signed by the court on May 9, 2005, that MCAO was authorized to act pursuant to Article IV of the IAD.

¶ 19 June 13, 2005: Donovan contacted MCSO and informed it that Defendant was being transferred within the California prison system to the California Rehabilitation Center (CRC) and Donovan would not honor Arizona's request to return Defendant before the transfer.

¶ 20 August—September 2005: Defendant was transferred to CRC, where ADOC and MCAO again attempted to take temporary custody of Defendant. CRC informed MCSO it would not release Defendant to Arizona until his California sentence expired in January 2006.

¶ 21 January 9, 2006: Within days after Defendant was released from confinement in California, he was extradited to Arizona. MCSO served Defendant with a bench warrant on January 9.

¶ 22 Defendant filed a Motion to Dismiss with Prejudice on February 21, 2006, alleging the State violated his rights to a speedy trial by not complying with the IAD because it did not bring him to trial within 180 days after he requested final disposition pursuant to Article III. The court granted Defendant's motion and dismissed the charges with prejudice. The State filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12–120.21.A.1 (2003), 13–4031 (2001) and –4032 (2001).

## STANDARD OF REVIEW

■ ¶ 23 We review the trial court's decision to dismiss with prejudice under the IAD for an abuse of discretion. *See Burrus,* 151 Ariz. at 577, 729 P.2d at 931 (citation omitted). However, we review the trial court's application of the IAD de novo. *Galvez,* 214 Ariz. at 157, ¶ 16, 150 P.3d at 244 (citation omitted).

## ANALYSIS

■ ¶ 24 On appeal and in the court below, the State argued that Defendant's First Article III Request was invalid because it was incomplete, and Defendant argued that the State did not prove that it effectively invoked Article IV before the effective date of his Second Article III Request. More fundamentally, the parties dispute whether Article III or Article IV of the IAD controls the time limits governing when a defendant must be brought to trial on the outstanding charge in Arizona. Defendant argues his First Article III Request, received by MCAO on March 23, 2005, triggered Article III and that the superior court correctly dismissed the charge against him because he was not brought to trial within 180 days of that request.[9] The State argues Defendant's First

9. The 180–day time limit under Article III begins to run when both the court and prosecutor receive the prisoner's written notice of his place of imprisonment and request for final disposition of outstanding charges against him. *Fex v. Michigan,* 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993); *People v. Bielecki,* 41 Colo. App. 256, 588 P.2d 377, 378 (1978); *State v. White,* 234 Kan. 340, 673 P.2d 1106, 1110 (1983); *State v. Ternaku,* 156 N.J.Super. 30, 383 A.2d 437, 439 (Ct.App.Div.1978). Thus, Defendant's First Article III Request, if valid, became effective on March 23, 2005, when MCAO received it. *See State v. Arwood,* 46 Or.App. 653, 612 P.2d 763, 764–65 (1980) (holding Article III request valid when prisoner only sent it to the court, but there was evidence in the record that the prosecutor eventually received the request).

Article III Request was not effective, at the earliest, until March 23, 2005 (the date by which the request had been received both by the court and the MCAO). It contends that its *Article IV* request, dated March 16, 2005 and signed by the court on March 18, 2005, predated both the First and Second Article III Requests and effectively nullified them. It argues that the charge should not have been dismissed because 120 days had not passed from the date Defendant was returned to Arizona. On the other hand, the State concedes that the time to commence trial expired under the IAD if this court concludes either the First or Second Article III Request controls.[10]

¶ 25 This case presents the situation in which both Article III and Article IV arguably have been invoked and we must decide which time limit to apply. The several jurisdictions that have confronted this dilemma have fashioned three different solutions: (1) when the defendant invokes Article III, he waives his Article IV rights so that the only time limit that applies is that in Article III; (2) the time limit that applies is governed by whether the defendant or receiving state first invokes the IAD; or (3) when both parties initiate proceedings under the IAD, both articles apply and the court looks to see whether either time limit has been breached. *See Ullery v. State*, 988 P.2d 332, 340–41 (Okla. Crim.App.1999) (citing cases). We reject the first and second solutions, because adoption of either requires us to hold that one article of the IAD necessarily preempts the other. Instead, we conclude the third approach discussed above best aligns with Arizona case law and most correctly interprets the IAD.

¶ 26 In *Burrus*, this court confronted a situation in which both Articles III and IV were invoked. 151 Ariz. at 575, 729 P.2d at 929. The defendant mailed a certified letter to the court and MCAO requesting final disposition of the charges pending against him pursuant to Article III of the IAD. *Id.* The State responded and indicated it would accept transfer of the defendant under either

Article III or Article IV. *Id.* The trial court ultimately found the defendant had been transferred pursuant to Article III and dismissed the case with prejudice for failure to bring him to trial within the 180 day time limit. *Id.* at 576, 729 P.2d at 930. We upheld the trial court's determination that the defendant had been transferred pursuant to Article III, based on our conclusion that the defendant's letter substantially complied with Article III requirements and the State's demonstrated willingness to accept transfer under either Article. *Id.* at 577–79, 729 P.2d at 931–33.

¶ 27 In this case, both Defendant and the State ask us to give priority to Article III and Article IV, respectively, which we decline to do. We do not interpret Articles III and IV of the IAD to be mutually exclusive of one another, whereby the invocation of one necessarily precludes the invocation of the other, because there is nothing in the text of the IAD to support such an interpretation. *See id.* at 578, 729 P.2d at 932 (noting "[n]o provision in the [IAD] gives priority to simultaneous requests"); *People v. Morris*, 160 Misc.2d 648, 610 N.Y.S.2d 725, 728 (N.Y. Westchester County Ct.1994) (declining "to construe the IAD so as to give priority to a request made pursuant to one Article to the exclusion of one made pursuant to the other").

¶ 28 Under the IAD, Article III and Article IV both grant specific rights to the prisoner and the receiving state, and each article also imposes separate obligations upon the receiving state. Once a prisoner invokes his rights under Article III, the receiving state is under the obligation to try him within 180 days. Conversely, under Article IV, the receiving state has the right to request temporary custody of the prisoner, but upon taking physical custody of him, it is obligated to bring him to trial within 120 days. Thus, in a situation such as the one before us where both Articles are invoked and different time limits apply to when the State must bring a defendant to trial, the

---

Alternatively, Defendant's Second Article III Request, which the State concedes complies with the IAD, would be effective as of May 5, 2005, when MCAO and the court received it.

10. We note the State never argued that time under the IAD should be tolled based on delays caused by Donovan or CRC. *See supra* ¶¶ 16, 19–20.

best rule "is to compute the period of delay under each Article to determine whether either has been violated." *Morris,* 610 N.Y.S.2d at 728.

¶ 29 In this case, the State does not dispute that Defendant's Second Article III Request, received by the court and MCAO on May 5, 2005, was a valid IAD request. Therefore, under Article III, the State was obligated to bring Defendant to trial on the outstanding charge by November 1, 2005, which it did not do. Thus, by not bringing Defendant to trial within 180 days of receiving a valid Article III request, the State violated Defendant's rights under the IAD and we need not reach the issues of whether (or when) the State properly invoked Article IV or whether time expired under Article IV.[11]

## CONCLUSION

¶ 30 We affirm the trial court's dismissal of the charge against Defendant with prejudice. In doing so, we hold that when both Article III and Article IV of the IAD are invoked, the court must calculate the time limit under each and determine whether either has been violated. If either time limit is breached, the charge against the defendant must be dismissed with prejudice.

CONCURRING: DIANE M. JOHNSEN and G. MURRAY SNOW, JJ.

11. We also need not address whether Defendant's First Article III Request substantially complied with Article III since the State concedes the Second Article III Request was valid.